1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

10

11   SHARP HEALTHCARE,                     )    Civil No. 09cv498 L(AJB)
                                           )
12        Petitioner/Counter-Respondent,   )    **ORDER GRANTING MOTION TO**
                                           )    **CONFIRM ARBITRATION AWARD**
13   v.                                    )    **[doc. no. 8]; DENYING MOTION TO**
                                           )    **VACATE THE ARBITRATION**
14   SHARP PROFESSIONAL NURSES             )    **AWARD [doc. nos. 1,10] and**
     NETWORK, UNITED NURSES                )    **DIRECTING ENTRY OF JUDGMENT**
15   ASSOCIATION OF CALIFORNIA,            )
     NUHHCE, AFSCME, AFL-CIO,              )
16                                         )
          Respondent/Counter-Petitioner.  )
17   _____)

18        Currently pending are petitioner's motion to vacate an arbitration award and respondent's

19   motion to confirm the arbitration award.  The Court finds the fully-briefed motions suitable for

20   determination on the papers submitted and without oral argument pursuant to Civil Local Rule

21   7.1(d)(1).

22        **A.    Factual Background**[1]

23        Petitioner Sharp Healthcare ("Sharp") and respondent Sharp Professional Nurses

24   Network, United Nurses Association of California, NUHHCE, AFSCME, AFL-CIO ("Union")

25   are parties to a collective bargaining agreement ("CBA").  Sharp employed Edna Daley

26   ("Daley"), a member of the Bargaining Unit represented by the Union, as an intensive care unit

27

28        [1]    The factual background is found in the Arbitrator's Decision and Award.  (Exh.
          R.)

("ICU") registered nurse at Sharp Chula Vista Medical Center.  Daley was injured on the job in December 2000, but she continued working until she was placed on complete medical leave in February 2006.  In December 2007, Daley's condition was rated permanent and stationary.

Sharp has a written Accommodation Review Policy and Process.  Based on that Policy, Sharp's Human Resources representative Debbie Prenatt scheduled an "interactive meeting"[2] with Daley, ICU Manager Cindy Stewart and Prenatt in order to determine if additional accommodations were available to Daley based upon her medical or physical limitations.

Daley requested Union representative Barbara Dent attend the interactive meeting.  It is undisputed that Union representatives had accompanied bargaining unit employees to interactive meetings prior to Daley's request,[3] but when advised that Dent would be attending the interactive meeting, Prenatt responded that Union representatives were generally not permitted to attend this type of meeting and Dent would not be permitted to attend in this instance.  The interactive meeting went forward without Dent's attendance.  At the interactive meeting, Sharp determined that Daley's condition could not be accommodated in her prior ICU position and no alternative positions were available to her.  As a result, Sharp terminated Daley's employment effective February 20, 2008.

Dent filed a grievance alleging that Sharp violated the CBA Sections 102, 601, 901 and 2302 when it refused to allow the Union representative, Dent, to attend the interactive meeting with Daley who had requested the representation because of potential adverse consequences concerning wage, hour and other terms and conditions of employment associated with such a meeting.

The matter went to arbitration with the Arbitrator finding against Sharp.  The Arbitrator

---

[2]       The purpose of the Employer's Accommodation Review Policy is "to establish a process for work accommodation for Sharp HealthCare employees or applicants covered by state and federal laws."  (Exh. K, p.156.)  "The employee is brought into the process to have an opportunity to explore viable options. . . . If an alternative position is not secured, the individual's employment with Sharp HealthCare will be terminated."  *Id.*

[3]       In a letter to Dent, Zoe Gardner, a Human Resources representative at Sharp, wrote: "In the past I have permitted your attendance at some of these meetings in an effort to build our collaborative working relationship. . . . I decided with a new year and a new contract we needed to get back to appropriate protocols."  (Answer Exh. 1, p.270.)

based her decision on Section 102 and Section 703 of the CBA.

### B. Legal Standard

"The scope of review of an arbitrator's decision in a labor dispute is extremely narrow." *Federated Dep't Stores v. United Food & Commercial Workers Union, Local 1442*, 901 F.2d 1494, 1496 (9th Cir. 1990); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 986 (9th Cir.), as amended, 275 F.3d 1187 (9th Cir. 2001). As the party chosen by the parties to resolve grievances under their CBA, the arbitrator is entitled to considerable deference, and her decision may be vacated only if it failed to derive its essence from the CBA itself; exceeded the scope of the issues submitted; violated an "explicit, well defined, and dominant" public policy; or was procured by fraud. *Id.*; *Virginia Mason Hosp. v. Washington State Nurses Ass'n.*, 511 F.3d 908, 913-14 (9th Cir. 2007) (citing *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000); *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

The arbitrator's award may be vacated if she ignored the plain language of the CBA, or the arbitrator's interpretation of any of the relevant CBA provisions was not, on its face, a plausible interpretation of the contract. *Virginia Mason.*, 511 F.3d at 913-914 (quoting *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local*, 752, 989 F.2d 1077, 1080 (9th Cir. 1993)). "Even if we were convinced that the arbitrator misread the contract or erred in interpreting it, such a conviction would not be a permissible ground for vacating the award." *Id.* (citing *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 37-38 (1987) (footnote omitted). If a labor arbitration award draws its essence from the CBA, *i.e.,* on its face it is a plausible interpretation of the CBA, then the courts must enforce it. The court's role is not to determine whether the arbitrator correctly interpreted the CBA but rather whether her decision was a plausible interpretation of the CBA. *McCabe Hamilton & Renny Co., Ltd. v. International Longshore and Warehouse Union, Local 142, AFL-CIO*, 624 F. Supp.2d 1236 (D. Hawai'i 2008).

An award draws its essence from the CBA when it is based on language in the CBA. *See Stead Motors v. Automotive Machinists Lodge No.,* 1173, 886 F.2d 1200, 1205 n.6 (9th Cir.

1989), *cert. denied*, 495 U.S. 946 (1990))("This term [fails to draw its essence] is reserved for those egregious cases in which a court determines that the arbitrator's award ignored the plain language of the contract, that he manifestly disregarded the contours of the bargain expressed in outline by the collective bargaining agreement."); *Jasper Cabinet Co. v. United Steelworkers of America, AFL-CIO-CLC, Upholstery and Allied Division*, 77 F.3d 1025, 1028 (7th Cir. 1996) ("We will uphold an arbitrator's award based upon a misreading of the contract so long as the arbitrator's interpretation is derived from the language of the contract."); *Sullivan v. Lemoncello*, 36 F.3d 676, 683 (7th Cir. 1994) ("All that is required is that the arbitrator's interpretation of the collective bargaining agreement is derived from the language of the requirement."); *Loveless v. Eastern Air Lines, Inc.*, 681 F.2d 1272, 1279 (11th Cir. 1982) (Awards not drawing their essence from the CBA reflect neither the language of the CBA nor the intent of the parties).

## C.   Discussion

After an evidentiary hearing and reviewing pre- and post-hearing briefing, Arbitrator Bickner found and concluded that Sharp violated the CBA when it refused to allow a Union Representative to attend and represent a bargaining unit member in meetings with the employer for the purpose of seeking accommodation to a bargaining unit member's medical or physical limitations when Union attendance is requested by the bargaining unit member.[4]

The parties agree that the CBA does not prohibit an employer from permitting a Union representative to attend an interactive meeting with the bargaining unit employee as part of the Employer's accommodation review process.   Sharp argues however that the express terms of the CBA prohibit requiring a Union representative to attend an interactive meeting.  The Union contends that interpretations of the express provisions in the CBA require Sharp to allow Union representation at such a meeting.

---

[4]      The Arbitrator noted that "[t]he parties were unable to agree on a joint submission, and authorized the Arbitrator to formulate the issue based on the evidence presented."  (Exh. R at 291.)  Accordingly Arbitrator Bickner framed the issue as follows:

> Does the Employer violate the collective bargaining agreement when it refuses to allow a Union Representative to attend and represent a bargaining unit member in meetings with the Employer for the purpose of seeking accommodation to a bargaining unit member's medical or physical limitations, when Union attendance is requested by the bargaining unit members.

1    The parties focus the Court's review of the arbitration award from different perspectives.

2   In moving to vacate the award, Sharp concentrates on the Arbitrator's authority as delineated in

3   the provisions of the CBA to assert that the Arbitrator exceeded the limitations placed on her

4   authority by the parties' Agreement.  "Because the authority of arbitrators is a subject of

5   collective bargaining, just as in any other contractual provision, the scope of the arbitrator's

6   authority is a question of contract authority that the parties have delegated to the arbitrator."

7   *W.R. Grace & Local Union 759*, 461 757, 765 (1983).  Sharp therefore points to CBA to show

8   the Arbitrator improperly determined that she had authority to impose a new duty on it in

9   contravention of the express agreement of the parties.

10   The Union approaches the award based on the Arbitrator's interpretation of the

11   Agreement, including her authority and the underlying grievance, and whether her decision was

12   based on a plausible interpretation of the CBA.  These approaches ultimately dovetail but each

13   position must be addressed sequentially.  In other words, the court must first determine if the

14   Arbitrator exceeded her authority by interpreting the Agreement to provide her with the

15   authority to examine and interpret the merits of the underlying grievance under the CBA.

16                    **1.      The Arbitrator's Authority**

17   In seeking to vacate the award, Sharp contends the arbitrator exceeded her authority by

18   failing to apply relevant and express  provisions of the parties' CBA, specifically § 906 and the

19   zipper clauses,[5] to find she had authority to consider the underlying grievance.

20   Section 906 of the CBA, a no-modification provision, provides the basis for Sharp's

21   contention that the Arbitrator acted outside of the authority granted by the CBA:

22   / / /

23   / / /

24   / / /

25

---

26        [5]      "Zipper" clauses, which combine integration and no-oral-modification clauses,
"[are] intended to foreclose claims of any representations outside the written contract . . .
27   executed by the parties." *Pace v. Honolulu Disposal Serv., Inc.*, 227 F.3d 1150, 1159 (9th Cir.
2000).  In the present case, the zipper clauses found in  Article XXIII refer to "Full
28   Negotiations", "Complete Agreement" and "Waiver."

> Section 906.  Arbitrator's Authority and Decision: The Arbitrator shall have jurisdiction and authority only to interpret, apply or determine compliance with the express language of this Agreement and the issue submitted to him/her.  The Arbitrator shall not have the power to add to, subtract from, or modify in any way the express language of the Agreement.  The Arbitrator shall have no authority to and shall not add to or modify in any way the Employer's responsibilities or duties under the Agreement, nor may the Arbitrator impose upon the Employer an obligation, responsibility or duty which is not expressly required of the Employer by any express provision of this Agreement.

(Exh. A at 33.)

According to Sharp, the language of Section 906 is clear and unambiguous: the Arbitrator may only "interpret, apply or determine compliance with the *express* language of the agreement."  Therefore, Sharp concludes the use of the term "express language" found in Section 906 means that Sharp is only obligated to allow Union representatives to attend interactive meetings if the CBA explicitly references those meetings and requires Sharp to allow Union representation at the interactive meetings.  Because there is no specific provision in the CBA that imposes an obligation on the part of Sharp to permit Union representatives at interactive meetings convened for determining accommodations under the ADA, Sharp asserts the Arbitrator acted outside her authority by ignoring the plain language of the Agreement found in Section 906.

Sharp also points to the zipper clauses in the CBA, Article XXIII, specifically Sections 2301, 2303 and 2304, as reinforcing the language of Section 906 that clearly and unambiguously restrict the arbitrator's authority to interpreting *express* terms.  As Sharp reiterates throughout their papers, "words must mean something" and the term "express" means express.  *See e.g.,* Reply to Motion to Vacate at 1-2.

Because there is no express reference to "interactive meetings" in the CBA, Sharp asserts that the Arbitrator's interpretation of the CBA begins and ends with Section 906, the express no-modification provision, and the zipper clauses; therefore, Sections 102 and 703 cannot provide any basis for the Arbitrator's authority.  Sharp concludes that "[t]he Arbitrator departed from the common meaning of 'express' when she found that Section 102 and Section 703 of the CBA are "express provisions requiring that Sharp permit Union representatives to attend interactive meetings with bargaining unit employees, even while admitting that neither provision includes

language requiring that Sharp do so." (Pet.'s Reply at 3.) Although an attractive argument, Sharp's reliance solely on the boilerplate no-modification provision and zipper clauses for the Arbitrator's lack of authority fails to take into account other express language found in the CBA, specifically Section 102.

Section 102 of the CBA, the Recognition Clause, provides that Sharp has a legal obligation to recognize the Union as the exclusive collective bargaining representative for the Bargaining Unit:

> The Employer recognizes the Association as the exclusive collective bargaining representative, for purposes of wages, hours and other terms and conditions of employment, of all employees employed in the . . . bargaining unit."

(Exh. A, p.12)

Sharp contends that Section 102's only express obligation is to recognize the Union as the collective bargaining representative of Bargaining Unit members and therefore, there are no express obligations, responsibilities or duties imposed upon Sharp by Section 102 beyond the recognition of the Union. Sharp reinforces this interpretation by pointing to the Waiver provision of the CBA, Section 2304:

> The Employer and the Association, for the terms of this Agreement, each voluntarily and unqualifiedly waive the right, and each agrees that the other shall not be obligated, to bargain collectively with respect to any subject, matter or practice involving the terms and conditions of employment of the bargaining Unit other than as specifically required by an express provision of this Agreement.

(Exh. A, p.64.)

The Union contends that it is in the Recognition Clause, Section 102, that the Union has the right and obligation to protect the bargaining rights of its members while the CBA is in effect notwithstanding Section 906 and the zipper clauses' provisions. Because Sharp cannot deal directly with bargaining unit employees regarding their hours, wages and other terms and conditions of employment under the CBA and the interactive meeting usually results in a change in hours, wages and other terms and conditions of employment, the Recognition Clause is an express provision that confers authority on the part of the Arbitrator to decide the underlying dispute.

The Arbitrator recognized this tension between Section 102 and Section 906 and the

zipper clauses expressly provided for under the Agreement.   Without disagreeing with Sharp's general premise that Section 906 and the zipper clauses prevent any modification to the Agreement in ways the parties did not intend, *i.e.,* that are not expressly set forth in the Agreement, she observed that

> Section 102 is an obligation *"expressly required of the Employer by an express provision"* of the Agreement, even though it obviously does not attempt to list and define al, or even any, of the specific obligations intended by the general language of Section 102, nor all the potential contingencies in which these obligations would be applicable.

(Exh. R at 302 (emphasis in original.)   Because under Section 906, "the Arbitrator shall have jurisdiction and authority only to interpret, apply or determine compliance with the *express language of this Agreement* and the issue submitted to him/her," the Arbitrator concluded that an express term of the Agreement, Section 102, provided her authority to interpret, apply or determine compliance with the Agreement in grievances concerning wages, hours and terms and conditions of employment.

It is at this point that the Court determines whether the Arbitrator's decision concerning her authority is a plausible interpretation of the Agreement.   As discussed above, an Arbitrator's decision will not be disturbed unless she ignores the plain language of the Agreement or on its face, the decision is not a plausible interpretation of the Agreement.  Even a misreading of the contract will be upheld if the arbitrator's interpretation is based upon the language of the Agreement.

Here, the Arbitrator did not ignore the plain language of the CBA – Section 102 is an express provision of the CBA addressing Sharp's recognition of the Union as the representative for bargaining unit members for wages, hours and other terms and conditions of employment. On its face, the Arbitrator's decision that the express terms of the Agreement provided her with authority to consider the underlying grievance is, on its face, a plausible interpretation of the Agreement.

## 2.    Section 703

Because the Court has determined that the Arbitrator's decision concerning her

authority is a plausible interpretation of the Agreement, the Court next determines whether the Arbitrator's decision that Section 703 entitles a bargaining unit employee to Union representation in connection with investigatory interviews is a plausible interpretation of the Agreement.

Section 703, "Investigatory Interviews," provides in part: "The Employer recognizes the right of employees under law to representation in connection with investigatory interviews." The parties agree that an investigatory interview is one in which discipline may reasonably be anticipated. Sharp refers to the "Coaching and Corrective Action Policy" to support its position that an investigatory interview is based on an employee's sub-standard performance and is not intended to apply to an interactive meeting based on its Accommodation Review Policy. (Exh. T.) Further, Sharp contends that Section 703 is inapplicable because interactive meetings are neither investigatory nor disciplinary. Because the intent of the Accommodation interactive meeting is unrelated to the disciplinary investigatory interview, Sharp contends Section 703 cannot be read to establish a right to Union representation at the interactive meeting.

Sharp's interactive meeting may be intended to be a problem solving process for determining how an employee may be accommodated under federal and state disability law but as the Union notes, and Sharp does not dispute, the process often results in adverse consequences to the employee's job security with respect to wage, hours and other terms and conditions of employment. Section 703 expressly recognizes the right of employees to Union representation in connection with investigatory interviews but the term "investigatory interview" is not limited by the express language in Section 703 to disciplinary proceedings. Therefore, Section 703 can provide for Union representation for the employee in interactive meetings.

The Arbitrator found based on the evidence presented that interactive meetings are investigatory in nature and often result in adverse employment action – evidence indicated that approximately 40% of the employees who participate in interactive meetings are eventually terminated. "These meetings also, obviously, involve consideration and determination of changes in wages, hours or other terms and conditions of employment. (Exh. R at 303.)

In interpreting the interplay between Section 102 and Section 703, the Arbitrator found

09cv498

1  that "the denial [of Union representation at an interactive meeting] deprives employees of their

2  rights under Section 703 and infringes on the ability of the Union to meet its responsibilities,

3  which the Employer is obligated to recognize by Section 102.  (Exh. R at 303.)

4      As discussed above, it is not the role of the Court to determine whether this is the correct

5  reading of the parties' Agreement.  Instead, the Court must determine whether the Arbitrator

6  reached her conclusions based on the plain language of the Agreement or whether her decision,

7  on its face, was a plausible interpretation of the Agreement.  The Court concludes that the award

8  is a plausible interpretation of the express terms of Section 102 and Section 703 of the CBA.

9      Here, the Arbitrator did not go outside the express language of the CBA to impose a new

10  obligation, responsibility or duty on Sharp.  Inferring a requirement in an express provision of

11  the Agreement " is to find it already in the CBA, albeit only implied, rather than to add a new

12  requirement."  *SFIC Properties, Inc. v. International Ass'n of Machinists & Aerospace Workers,*

13  *Dist. Lodge 94, Local Lodge 311*, 103 F.3d 923, 926-27 (9th Cir. 1996).

14      The arbitrator followed the plain language of the CBA that limits the scope of her

15  authority to express provisions of the Agreement.  The Award represented a "plausible

16  interpretation" of the CBA, that requires Sharp to allow Union representation at interactive

17  meetings.

18  **III.**    **Conclusion**

19      Based on the foregoing, **IT IS ORDERED:**

20      1.    Petitioner's motion to vacate the arbitration award is **DENIED** [doc. nos. 1, 10];

21      2.    Respondent's motion to confirm arbitration award is **GRANTED** [doc. no. 8]; and

22      The Clerk of the Court is directed to enter judgment in accordance with this Order.

23      **IT IS SO ORDERED.**

24  DATED:  March 22, 2010

25      M. James Lorenz

26      United States District Court Judge

27  ///

28  ///

10

09cv498

COPY TO:

HON. ANTHONY J. BATTAGLIA
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL